UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD SIMPSON,

               Petitioner,

                                                    CASE NO. 06-CV-11967
v.                                       HONORABLE DENISE PAGE HOOD

MILLICENT WARREN,

               Respondent.

_____/

**OPINION AND ORDER CONDITIONALLY GRANTING**
**THE PETITION FOR WRIT OF HABEAS CORPUS**

**I.**      **Introduction**

Michigan prisoner Ronald Simpson ("Petitioner") has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of assault with intent to murder, MICH. COMP. LAWS § 750.83, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Genesee County Circuit Court. He was sentenced to 30 to 50 years imprisonment on the assault conviction and a consecutive term of two years imprisonment on the felony firearm conviction in 1986.

In his pleadings, Petitioner raises claims concerning the denial of his state court motion for relief from judgment, the use of dual juries, the non-disclosure of evidence, ineffective assistance of trial and appellate counsel, sentencing and prosecutorial misconduct. For the reasons stated herein, the Court conditionally grants the petition for writ of habeas corpus.

1

## II.     Facts and Procedural History

Petitioner's convictions arise from a shooting assault upon a police officer in the aftermath

of a robbery in Flint, Michigan on October 29, 1985.  On post-conviction review, the state trial court

set forth the basic facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F.

Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> Originally four individuals were arrested and charged in this case. Those individuals
> were Ronald Simpson, Charles Hughes, (phonetic), Jeff Sharp, (phonetic), and
> Sheldon Smith (phonetic). The charges in this case included the charge of assault
> with intent to murder police officer Charles Westin, (phonetic) and an assault with
> intent to murder police officer Jerome Koger, K-O-G-E-R.
>
> Mr. Simpson was only to stand trial with respect to the charge involving Charles
> Westin. In addition to the charges of assault with intent to murder, these defendants
> were also charged with armed robbery. The armed robbery was alleged to have
> occurred just prior to the events leading up to these charges. However, defendants
> were never tried on the armed robbery charge. And, in fact, after this case was tried,
> a Genesee County Circuit Judge dismissed the armed robbery case on the grounds
> of double jeopardy, and that decision was upheld in the appellate courts.
>
> So, while it is alleged by the People, and it was presented into evidence, the armed
> robbery has never been established in front of a jury. However, the armed robbery --
> or the alleged armed robbery did play a significant part in this trial.
>
> The trial was scheduled to begin on June 3rd, 1986, however, just prior to the start
> of the trial, plea agreements were reached with co-defendants, Jeff Sharp and
> Sheldon Smith. This generated a fair amount of discussion on the record June 3rd,
> and eventually led to a short adjournment in order to allow defense counsel to
> prepare for this unexpected occurrence.
>
> There was also a fair amount of discussion on the record on that date as to the need
> for a separate jury for each of the remaining two defendants, and the extent to which
> testimony, with respect to the alleged armed robbery, would come in during this trial.
>
> The procedure was further complicated by the facts which showed that Mr. Simpson
> became separated from the other defendants rather early on with respect to the case,
> and was not involved in the assault on Officer Westin, in which Officer Westin was
> wounded. The fact that Mr. Simpson was not involved in that, presented additional
> concerns with respect to the fairness of trying him together with Mr. Hughes, who
> was convicted of the assault on Mr. Westin, that led to his injuries.

2

In any event, the procedural dispute was resolved by allowing for separate juries, one for Mr. Simpson, and one for Mr. Hughes, by limiting the evidence that would come in with respect to the armed robbery, and by limiting the cross-examination of defendants, should they testify with respect to their participation in the armed robbery. The admission of evidence with respect to the armed robbery was allowed in order to show the state of mind of the defendants leading up to the alleged assaults in this case.

Now, I'm going to give a brief overview of the facts and, again, I will try to point out where there are disputes in the facts. The four original defendants got together on the day of the incident and drove around doing various errands, etcetera. Most of the individuals in the vehicle were armed. At some point during the day, they secured a sawed off shotgun which was also in the car. The vehicle was originally driven by defendant Simpson, but ended up being driven by co-defendant, Jeff Sharp.

Now, according to the two defendants who entered guilty pleas and testified against defendant, the four individuals decided to rob a drug house. They went to the location, they sort of looked over the scene to see if anything was out of the ordinary, and, then, according to the two co-defendants, Mr. Simpson and Mr. Hughes went in and robbed the drug house. Not much was obtained. Defendant denies having done that. The person who was in the house, a Shirley Williams, also testified that she was robbed.

In any event, even viewing the facts in a light most favorable to the defendant, they were at this location, the location was a suspected drug house, and the location was under surveillance at the time by an undercover police officer by the name of Jerome Koger. Officer Koger became suspicious by the defendants' activities, going up to the house, coming back to the car, moving the car that Officer Koger radioed for assistance, and then he got out of his vehicle to get a better look. He saw the defendant and one other individual run from the apartment, actually, get into the vehicle and leave. He gave chase and an Officer Westin gave chase.

Officer Westin had the first contact with the vehicle, and he was also in an unmarked vehicle and in civilian clothes. The vehicle containing the defendants pulled into a driveway. Officer Westin pulled up some distance back. He claims he exited his vehicle and tried to inform those inside that he was a police officer. It is agreed that Mr. Simpson exited the vehicle at that time. Mr. Simpson had his weapon in his hand. Officer Westin agrees that he got out of his car with his weapon in his hand, and then a lot of shooting occurred.

Officer Westin was not able to state under oath on the record that defendant Simpson fired his gun. However, the two defendants, who testified during the trial, testified that Mr. Simpson did fire the gun. Officer Westin returned fire. The vehicle sped away. Mr. Simpson ran behind a house, past a garage, and climbed a fence. At trial,

Officer Westin said that when he saw Simpson leaving the scene, the barrel of his gun was 'smoking as though it had just been fired. He admits that he never put that in the report, and never told anybody before that, and the first time he was revealing that information was at trial. There were no shell casings found from a 9 millimeter gun, the kind that Mr. Simpson had at the scene. However, later testimony revealed circumstantial evidence to the fact that several bullets were missing from the box of ammunition, and could not be accounted for.

Mr. Simpson went on foot to Lisa Key – Lisa Keyes' (phonetic) apartment, or home. According to Ms. Keyes, Simpson admitted that he knew Officer Westin was a police officer, admitted that he fired shots at him, and he changed his clothes, hid some guns in a garbage can, and then left. Lisa Keyes was Jeff Sharp's girlfriend.

The other three individuals continued to flee the police. They drove through a good part of Flint. At one point, one of the defendants stood up in the sunroof of the vehicle and fired the shotgun at the pursuing officers. The vehicle was eventually trapped on a dead end street. One of the defendants was on crutches, and he gave himself up on the scene. The other two defendants abandoned the vehicle, ran into a railroad yard, where they were eventually found hiding under a railroad car.

Officer Westin, who was the individual to trap them on the dead end street, ended up being shot by co-defendant, Mr. Hughes, and he was wounded in the shoulder.

The testimony against Mr. Simpson and the trial against Mr. Simpson was limited to the first encounter with Officer Westin. He was not charged with respect to the shooting at Officer Koger, which occurred later, as well as the assault with intent to murder, or great bodily harm charge against Mr. Hughes for wounding Officer Westin.

Additionally, Jeff Sharp, one of the co-defendants, testified that he had a conversation with defendant Simpson, and defendant Simpson had told him that he knew Officer Westin was a police officer, even though he was in civilian clothes, because Simpson had been at a drug house that had been raided, and that the Officer was one of the individuals who conducted the raid. That was similar to the statement that Lisa Keyes attributed to Mr. Simpson, as well.

At trial, Mr. Simpson disputed those statements, claiming that they were made by Mr. Sharp and Ms. Keyes in order to assist Mr. Sharp in getting out of this difficulty.

Mr. – Mr. Simpson was convicted of assault with intent to murder and felony firearm. Mr. Hughes was convicted of assault with intent to do great bodily harm and felony firearm. Mr. Simpson was sentenced to the mandatory two years for felony firearm, and 30 to 50 years on the assault with intent to murder conviction. That sentence was greatly in excess of sentencing guidelines.

Trial Ct. Ruling, 12/14/03 Tr., pp. 4-10.

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising claims concerning the admission of other acts evidence regarding the robbery and the co-defendant's shooting, prosecutorial misconduct, the admission of hearsay testimony, the sufficiency of the evidence, the jury instructions, and the validity of his sentence. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *See People v. Simpson*, No. 98896 (Mich. Ct. App. June 23, 1988) (unpublished). Petitioner sought leave to appeal with the Michigan Supreme Court, which was denied. *See People v. Simpson*, No. 83217 (Mich. Feb. 1, 1989).

In 1993, Petitioner filed a motion for relief from judgment in the state trial court asserting that the prosecutor suppressed evidence favorable to the defense, that the prosecutor engaged in misconduct by referencing other bad acts and inadmissible evidence, and that his sentence is disproportionate and an abuse of discretion. The trial court denied the motion on April 7, 1994.

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims and an ineffective assistance of trial counsel claim, which was denied pursuant to MCR 6.508(D). *See People v. Simpson*, No. 189245 (Mich. Ct. App. June 7, 1996) (unpublished). Petitioner also filed a delayed application for leave to appeal with the Michigan Supreme Court raising the same claims, as well as a claim that he was prejudiced by the retroactive application of MCR 6.508(D). The Michigan Supreme Court denied leave to appeal pursuant to MCR 6.508(D). *See People v. Simpson*, 454 Mich. 919, 564 N.W.2d 897 (1997).

In 1997, Petitioner filed a second motion for relief from judgment with the state trial court, asserting the following claims:

I.    The trial court's application of the MCR 6.508(D) standard of review when deciding his post-conviction motion, where he was convicted and received direct appellate review before enactment of MCR 6.508(D), was a prejudicial and unconstitutional retroactive use of law which denied him due process of law and a fair post-conviction review.

II.    He was denied the right to a fair and impartial jury where the trial court used a prejudicial dual jury system instead of completely severing his trial from that of co-defendant Hughes, in which the prosecution intentionally injected evidence of a different assault on a police officer that occurred after Simpson left the scene and involved only co-defendant Hughes.

III.    Reversible error was established by the prosecution's suppression of evidence that was requested by and favorable to Petitioner.

IV.    He was denied due process and the right to a fair trial under both state and federal constitutional parameters where:  A) the trial court allowed the prosecutor to repeatedly violate the court's order from pre-trial motion in limine ruling; and B) the cumulative effect of such prosecutorial misconduct deprived him of the right to a fair trial.

V.    The ineffective assistance of counsel at trial is good cause under the U.S. Constitution for the previous failure to raise the issues advanced in his delayed application; he was prejudiced by the irregularities which deprived him of a reasonably likely chance of acquittal.

VI.    He was denied the effective assistance of appellate counsel for counsel's failure to raise the meritorious issues cited herein which deprived him of a reasonably likely chance of acquittal.

VII.    Where the guideline score was a 10 to 20 year sentence range, a departure by the sentencing judge to a 30 to 50 year sentence based on reasons which are a restatement of factors already included and considered in the guideline scoring, the sentencing judge violated the principle of proportionality.

The trial court denied the motion for relief from judgment on the record on December 15, 2003 and in a written order on December 22, 2003.  Petitioner then filed an application for leave to appeal with the Michigan Court of Appeals, which was denied pursuant to MCR 6.508(D).  *See People v. Simpson*, No. 253699 (Mich. Ct. App. July 15, 2004) (unpublished).  The Michigan Supreme Court similarly denied leave to appeal.  *See People v. Simpson*, 472 Mich. 914, 696 N.W.2d 721 (2005).

6

Petitioner thereafter filed the present federal petition for writ of habeas corpus essentially raising the same claims presented in his second post-judgment motion before the state courts. Respondent has filed an answer to the petition asserting that the claims are not cognizable, barred by procedural default, and/or lack merit. Petitioner has filed a reply to that answer. Both parties have also filed supplemental pleadings with the Court.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., governs this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

7

habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.    Analysis**

8

Procedural Default

As an initial matter, Respondent contends that Petitioner's habeas claims concerning the dual jury system, the effectiveness of trial and appellate counsel, and sentencing are barred by procedural default. The United States Supreme Court has described the doctrine of procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006), *cert. denied*, _ U.S. _, 127 S. Ct. 578 (2006). Although the procedural default doctrine precludes habeas relief on a defaulted claim absent satisfaction of the cause-and-prejudice test, the doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [substantive] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Given the circumstances of this case and the United States Court of Appeals for the Sixth Circuit's decision in *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), *cert. den.* _ U.S. _, 128 S. Ct. 1897 (2008) (indicating that it may be necessary to look to the trial court's decision denying a petitioner's motion for relief from judgment to determine

whether the state appellate courts relied upon a procedural default in denying relief pursuant to MCR 6.508(D)), the Court finds that the procedural issue is complex and the interests of judicial economy are best served by addressing the merits of Petitioner's claims.[1]

### MCR 6.508(D) Claim

Petitioner first contends that he is entitled to habeas relief because the state courts erred in relying upon Michigan Court Rule 6.508(D) in denying him relief on his motion for relief from judgment. It is well-settled, however, that a state court's alleged failure to properly apply its own procedural rule is not cognizable on federal habeas review. This Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1975). Habeas relief is unavailable for mere errors of state law and a federal court will not review a state court's decision on a matter of purely state law. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Long v. Smith*, 663 F.2d 18 (6th Cir. 1981).

Moreover, the United States Court of Appeals for the Sixth Circuit has consistently held that "errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007). A federal habeas corpus petition cannot be

---

[1] In a recent unpublished opinion, the Sixth Circuit notes an intra-circuit conflict between *Abela* on the one hand and a line of cases beginning with *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) on the other. *See Alexander v. Smith*, 311 Fed. Appx. 875, No. 06-1569, 2009 WL 426261, at *5-*6 (6th Cir. Feb. 20, 2009). The *Simpson* line of cases hold that formulaic one-sentence orders denying relief in reliance on Michigan Court Rule 6.508(D), constitute "explained" decisions that enforce a state procedural bar to federal habeas review. *Id.* The *Alexander* court found the *Simpson* line of authority controlling, such that the content of earlier state court decisions - whether or not they rest on the procedural bar or on the merits – cannot be considered. *Id.* at *6. In *Ivory v. Jackson*, 509 F.3d 284, 292 (6th Cir. 2007), however, the court seems to concur with the *Abela* panel that whether or not a one-sentence order from the Michigan Supreme Court that relies upon Michigan Court Rule 6.508(D) is a "reasoned state-court opinion" for purposes of procedural default analysis, depends upon whether or not the lower state court addresses the merits of a state prisoner's claims. The *Alexander* court does not discuss *Ivory v. Jackson*.

used to mount a challenge to a state's scheme of post-conviction relief because the states have no constitutional obligation to provide post-conviction remedies. *See Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)). Challenges to state collateral post-conviction proceedings cannot be brought under the federal habeas statute because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.'" *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Cress,* 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247). The scope of the writ does not encompass a "'second tier of complaints about deficiencies in state post-conviction proceedings.'" *Id.* (quoting *Kirby*, 794 F.2d at 248). Because Petitioner challenges the state courts' application of MCR 6.508(D) in his state collateral post-conviction proceedings, he fails to state a claim upon which habeas relief may be granted as to this issue.

Dual Jury Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in trying him by separate jury with co-defendant Hughes rather than providing him with a completely separate trial. Petitioner first raised this issue in the state courts in his second motion for relief from judgment and related appeals.

The issue of severance is governed by state law. *See Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002). The Sixth Circuit has ruled that a severance claim cannot provide a basis for

11

habeas relief because the United States Supreme Court has never clearly established a federal right to severance. *See Phillips v. Million*, 374 F.3d 395, 398 (6th Cir. 2004). Petitioner has thus failed to state a claim upon which habeas relief may be granted as to this issue. Moreover, courts favor the joinder of defendants charged with participating in the same act or series of acts because it is more efficient than conducting separate trials. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993). Petitioner has not shown that being tried by separate jury in a joint trial with co-defendant Hughes compromised "a specific trial right" or prevented his jury from making a "reliable judgment about guilt or innocence." *Id*. at 539. Petitioner has failed to establish a violation of his constitutional rights. Habeas relief is not warranted on this claim.

<u>Suppression of Evidence Claim</u>

Petitioner next asserts that he is entitled to habeas relief because the prosecution failed to disclose evidence favorable to the defense. Specifically, Petitioner asserts that the prosecution withheld evidence that the police coerced Marcus Lanes and Shirley Williams into making police statements about the robbery which preceded the assault.

A prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In other words, to find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *See Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-36

12

(1995). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993). The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. *Bagley, supra*; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

The *Brady* rule only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also Mullins v. United States*, 22 F.3d 1365, 1370-71 (6th Cir. 1994). There is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source. *See Carter v. Bell*, 218 F.3d 581, 601-03 (6th Cir. 2000); *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). Thus, in order to establish a *Brady* claim, a petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. *See Carter*, 218 F.3d at 601; *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The petitioner bears the burden of establishing a *Brady* violation. *Carter*, 218 F.3d at 601.

Petitioner presented this claim to the state courts in his first motion for relief from judgment. The trial court denied relief on this issue, finding that Petitioner had not shown cause for failing to previously raise the claim and that he had not established prejudice by showing that such impeachment evidence would have provided a reasonably likely chance of acquittal. *See People v. Simpson*, No. 85-35676-FC, 3-4 (Genesee Co. Cir. Ct. April 6, 1994).

This decision is neither contrary to Supreme Court precedent nor an unreasonable

13

application thereof.  Aside from any default issues, Petitioner has failed to establish a *Brady* violation warranting habeas relief.  First, Petitioner has not shown that the evidence was unknown or unavailable from another source.  Petitioner was aware that Lanes and Williams had been questioned by police when Williams testified at the preliminary examination and trial.  He knew of essential facts which could have permitted him to pursue possible impeachment evidence before or during trial.  Petitioner has not shown that the prosecution intentionally withheld any evidence.  Second, Williams' testimony concerned the robbery which preceded the assault underlying Petitioner's charges, not the assault incident itself.  Any impeachment evidence as to her testimony (arising from Lanes' treatment by police) was not particularly exculpatory nor material to Petitioner's guilt of the charged offenses.  Habeas relief is not warranted on this claim.[2]

### Ineffective Assistance of Trial Counsel Claim

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to investigate police threats to Shirley Williams and Marcus Lanes.  Petitioner first raised this claim on appeal of the trial court's denial of his first motion for relief from judgment and again before each state court in his second motion for relief from judgment.

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must  prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as

---

[2] On March 9, 2009, Petitioner filed a Motion for Leave to Supplement Pleading in support of his *Brady* claim.  *See* Docket No. 46.  The Court will GRANT Petitioner's request to supplement his Petition, but nevertheless concludes that after review, the Court is not persuaded that Petitioner is entitled to relief based on this claim.

counsel as guaranteed by the Sixth Amendment. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" to prove deficient performance. *Id.* at 690. A habeas court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

Citing *Strickland*, the state trial court denied relief on this claim finding that counsel was not deficient for failing to raise a meritless issue. *See* 12/14/2003 Ruling, pp. 27-28. The trial court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner has not shown that counsel erred by allegedly failing to investigate the circumstances surrounding Marcus Lanes' and Shirley Williams' police statements or that he was prejudiced by such conduct. Evidence that Lanes cooperated with police because he was threatened with a probation violation does not necessarily mean that he or Williams lied to the police or that Williams provided false testimony at trial. Williams' testimony had limited relevancy at trial given that it concerned the prior robbery and not the assault incident for which Petitioner was on trial. Petitioner has not shown that trial counsel erred and/or that he was prejudiced by counsel's conduct

15

so as to establish that counsel was ineffective under the *Strickland* standard.  Habeas relief is not warranted on this claim.

### Ineffective Assistance of Appellate Counsel Claim

Petitioner also asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to pursue the foregoing issues on direct appeal of his convictions.  Petitioner raised this claim in his second motion for relief from judgment.  The trial court denied relief finding that appellate counsel could not be deemed ineffective where the disputed issues were ultimately determined to be without merit.  *See* 12/14/2003 Ruling, pp. 27-28.  The trial court's decision is neither contrary to *Strickland* nor an unreasonable application thereof.  Because the issues appellate counsel failed to raise on direct appeal, which Petitioner raised in his first motion for relief from judgment, lacked merit and did not warrant relief, Petitioner cannot establish that appellate counsel was ineffective under *Strickland* for failing to raise any such claims on direct appeal.

Moreover, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 754 (1983).  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance.  Appellate counsel presented six viable issues on direct appeal concerning the admission of the prior robbery evidence, the references to the shooting by co-defendant Hughes, prosecutorial misconduct, the sufficiency of the evidence, the jury instructions, the admission of shotgun evidence, and sentencing.  Appellate counsel was not ineffective under *Strickland*.  Habeas relief is not warranted on this claim.

<u>Sentencing Claim</u>

Petitioner asserts that he is entitled to habeas relief because his assault sentence of 30 to 50 years imprisonment constitutes an improper departure above the sentencing guidelines, is disproportionate, violates due process, and constitutes cruel and unusual punishment.  Petitioner raised his sentencing issues in various forms on direct appeal and in his two motions for relief from judgment.  On direct appeal, the Michigan Court of Appeals ruled that the trial court did not abuse its discretion in departing above the guidelines and that the sentence did not shock the conscious of the court.  *See Simpson*, Mich. App. No. 98896 at 5.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeds the statutory limits or is wholly unauthorized by law.  *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).  Petitioner's claim that the trial court erred in departing above the guideline range is not cognizable on federal habeas review because it is a state law claim.  *See McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).  Any error in departing above the guideline range does not merit federal habeas relief.  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  Even if Petitioner's assault sentence exceeds the minimum guideline range, it is within the statutory maximum.  *See* MICH. COMP. LAWS § 750.83.  Petitioner has thus failed to state a claim upon which federal habeas relief may be granted as to this issue.

To the extent that Petitioner raises sentencing issues beyond the issue raised on direct appeal, the state courts have not clearly addressed whether the alleged errors constitute a denial of Petitioner's constitutional rights. Accordingly, the deference due under 28 U.S.C. § 2254(d) does not apply, and habeas review of the claims is *de novo*. *See Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)). Having undertaken the requisite review, the Court concludes that the trial court did not violate Petitioner's rights in imposing his sentence.

Petitioner asserts that his sentence violates due process because the trial court improperly relied upon the armed robbery incident which preceded the assault. A sentence may violate due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested information at sentencing). To prevail on such a claim, the petitioner must show that the trial judge relied upon the allegedly false information. *See United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992). Petitioner has made no such showing. Petitioner has not alleged any facts to demonstrate that the trial court relied upon materially false or inaccurate information in imposing his sentence, nor has he shown that he was denied an opportunity to correct perceived errors in the record. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998). Habeas relief is not warranted on this issue.

Petitioner also asserts that the trial court violated his Sixth Amendment rights in imposing

18

his sentence.  In *Apprendi v. New Jersey*, 530 U.S. 466, 530 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court applied *Apprendi* to a state sentencing guideline scheme, under which the maximum penalty could be increased by judicial fact-finding, held that the state guideline scheme violated Sixth Amendment rights, and reiterated that any fact that increased the maximum sentence must be admitted by the defendant or proven to a jury beyond a reasonable doubt.  *See United States v. Booker*, 543 U.S. 220, 232 (2005).  Petitioner cites *Apprendi* and *Blakely* in his pleadings.

This claim lacks merit.  The *Blakely* line of cases does not apply to Michigan's intermediate sentencing scheme.  In Michigan, the maximum sentence is established by statute and cannot be varied by the sentencing judge; the judge's only discretion is in setting the minimum sentence.  The federal courts within this Circuit have examined Michigan's indeterminate sentencing scheme and have found no possible Sixth Amendment violation.  *See Tironi v. Birkett*, No. 06-1557, 2007 WL 3226198 (6th Cir. Oct. 26, 2007) (unpublished); *Delavern v. Harry*, No. 07-CV-13293, 2007 WL 2652603, *3-4 (E.D. Mich. Sept. 7, 2007); *Connor v. Romanowski*, No. 05-74074, 2007 WL 1345066 (E.D. Mich. May 4, 2007); *McNall v. McKee*, No. 1:06-CV-760, 2006 WL 3456677, * 2 (W.D. Mich. Nov.30, 2006); *accord People v. Drohan*, 475 Mich. 140, 160-62, 715 N.W.2d 778 (2006).  Habeas relief is therefore not warranted on this claim.

Petitioner also asserts that his sentence is disproportionate and constitutes cruel and unusual punishment.  To the extent that Petitioner asserts that his sentence is disproportionate under state law, he fails to state a claim for federal habeas relief.  *See Austin v. Jackson*, 231 F.3d 298, 300 (6th

19

Cir. 2000) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).  Additionally, there is no federal constitutional right to individualized sentencing.  *See United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Petitioner is also not entitled to relief on a claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment.  The United States Constitution does not require strict proportionality between a crime and its punishment.  *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583.  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin*, 213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *Thomas*, 49 F.3d at 261.  Petitioner was sentenced to 30 to 50 years imprisonment on the assault conviction and a consecutive term of two years imprisonment on the felony firearm conviction.  Those sentences are within the statutory maximums.  *See* Mich. Comp. L. §§ 750.83, 750.227b.  The trial court acted within its discretion in imposing Petitioner's sentence and there is no extreme disparity between his crimes and sentence so as to offend the Eighth Amendment.  Habeas relief is not warranted on these sentencing issues.

Prosecutorial Misconduct Claims

Petitioner asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by referencing the pre-assault robbery and by referencing the subsequent shooting of a police officer by co-defendant Hughes.

20

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner raised his claims of prosecutorial misconduct on direct appeal, as well as in his subsequent motions for relief from judgment. On direct appeal, the Michigan Court of Appeals ruled that evidence of the prior robbery was admissible to show Petitioner's state of mind and intent and to explain the circumstances of the crime because the incidents were closely connected. The

21

court concluded that the prosecutor did not engage in misconduct by referencing the prior robbery. As to the prosecutor's references to the shooting by co-defendant Hughes, the Michigan Court of Appeals concluded that such comments were improper, but harmless due to the overwhelming evidence of guilt presented at trial. *See Simpson*, Mich. App. No. 98896 at 2-3.

The Court finds that the state court's decision involved an unreasonable application of clearly established federal law and the Court grants Petitioner a conditional writ of habeas corpus. The Court begins with the rule that the prosecution in a criminal trial has a duty to not only convict, but also to vindicate the truth. *See Berger v. U.S*, 295 U.S. 78, 88 (1935). Although the prosecutor "may strike hard blows, he is not at liberty to strike foul ones." *Id.* The record demonstrates the impropriety of the prosecutor's conduct. Because evidence of the prior robbery was deemed relevant and admissible by the trial court, the prosecutor cannot be said to have engaged in misconduct by merely referencing the robbery. However, the prosecutor's comments on the robbery exceeded the trial court's boundaries on several occasions and were highly improper. Specifically, the trial court ruled that the prosecution was permitted to establish that a robbery had immediately preceded the crime charged, but "[t]hat there may not be detail but there may be such description of events so as to allow the jury by the prosecutor's position to be aware by their claim that this was not an isolated incident but was related to a previous act." Trial Tr., Vol. II, p. 21. Despite this ruling, the prosecutor made it a point to emphasize prejudicial details about the armed robbery, including specifically that Petitioner had placed a gun to the occupant's head. *See* Trial Tr., Vol. I, pgs. 5-6; Vol. II, p. 49; Vol. IV, pgs. 22, 24, 35, 36; Vol. VII, p. 35; Vol. IX, pgs. 12-13, 60, 63, and 74. By way of example, the prosecutor questioned Petitioner:

> Pros:   You are testifying that you did not take this gun into that particular
>             apartment and put it to Shirley Williams' head and robbed her, is

22

that what you are testifying to?

      \*                        \*                       \*

Are you telling the jury that you did not go into that particular apartment and put this weapon, this black weapon, to Shirley Williams' head, is that right?

Trial Tr., Vol. IX, pgs. 63-67.  The prosecutor also introduced photographs of Ms Williams' apartment to establish that Petitioner ransacked her apartment, despite advising the Court and the defense that he had no intention of introducing such evidence.  *See* Trial. Tr., Vol. II, p. 34; Vol. IX, p. 67.

As to the prosecutor's references to the shooting by co-defendant Hughes, this Court likewise concludes that such references were highly improper.  The prosecutor elicited full and detailed testimony from the very first witness in front of Petitioner's jury regarding the shots fired between co-defendant Hughes and Officer Koger.  *See* Trial. Tr., Vol. I, 43-46.  Admitting that "[w]e got a little ahead on this witness[,]" the prosecutor later elicited testimony from a co-defendant regarding a shotgun, used only in the subsequent shooting between Hughes and Koger. *See* Trial. Tr., Vol. IX, pgs. 12-13.

The Court finds that the prosecutor's improper statements were also flagrant.  The statements were, without question, intended to mislead the jury and prejudice Petitioner.  These improprieties were not isolated, but permeated the entire trial.  The statements were deliberate. That the prosecutor feigned inadvertence at eliciting improper testimony, but did so, not once, but on at least eleven separate occasions compels the conclusion that his tactics were indeed deliberately placed before the jury.  .  *See* Trial Tr., Vol. I, pgs. 5-6; Vol. II, p. 49; Vol. IV, pgs. 22, 24, 35, 36; Vol. VII, p. 35; Vol. IX, pgs. 12-13, 60, 63, and 74.

Further, it cannot be said that the evidence against Petitioner was strong.  Rather, Petitioner

23

was convicted on the testimony of his co-defendants, and a girlfriend of one of the co-defendants. Both co-defendants received the benefit of dismissed charges in exchange for their testimony.  In addition, Officer Westin testified that he could not state under oath that he had witnessed Petitioner fire his gun at him, but he testified that he saw Petitioner's gun smoking when he left the scene. Westin only remembered the fact of the smoking gun at trial, and not during his testimony at the preliminary exam, nor when preparing his police report.  A prosecution expert testified that the cartridges fired from Petitioner's weapon "should be smokeless" although he later qualified this testimony.  Trial Tr., Vol. IX, p. 21, 24.  Testimony also revealed there were no shell casings retrieved at the scene.

Given the prosecutor's deliberate and repeated "foul blows" this Court has "grave doubt" that such errors did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon jury's verdict).  This Court  grants Petitioner a conditional writ of habeas corpus.

## V.    Conclusion

Accordingly,

IT IS ORDERED that Petitioner's Petition for a Writ of Habeas Corpus is CONDITIONALLY GRANTED.

IT IS FURTHER ORDERED that unless the State takes action to afford Petitioner a new trial within ninety (90) days of the date of this opinion, he may apply for a Writ ordering Respondent to Release him from custody forthwith.

IT IS FURTHER ORDERED that Respondent serve a copy of this Opinion and Order to

the appropriate State Court and Prosecuting Attorney within ten (10) days' receipt of this Opinion

and Order.  Respondent must file a proof of service with the Court.

IT IS FURTHER ORDERED that Petitioner's Motion for leave to supplement pleading

[**Docket No. 46, filed March 9, 2009**] is GRANTED.

IT IS SO ORDERED.




S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  September 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of
record and Ronald Simpson, Reg. No. 184486, Saginaw Correctional Facility, 9625 Pierce Rd.,
Freeland, MI 48623 on September 29, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager